**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMAR L. TRAVILLION,            )
                                )
              Plaintiff,        )
                                )
         v.                     )       Civil Action No. 04-912
                                )       JUDGE CERCONE
LT. LEON, *et al.*,             )       MAGISTRATE JUDGE CAIAZZA
                                )
              Defendants.       )


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is recommended that the Motion for Summary Judgment
filed by the remaining Defendant, Lieutenant Leon, be granted.

**II. REPORT**

The Petitioner, Jamar Travillion ("the Petitioner" or
"Travillion"), alleges that while he was a pre-trial detainee at
the Allegheny County Jail, he was forced to eat a meatless meal
in recognition of a series of religious holydays. He alleges
further that his attempt to complain about being forced to eat a
meatless meal had two effects: (1) he was not provided with a
complaint form and his attempts to file a grievance or complaint
were ignored; and (2) Defendant Leon used mace and "physically
abused" him.

The Defendants filed a Motion to Dismiss which this court
granted in all respects  -save the claim that defendant Leon
employed excessive force in violation of the Eighth Amendment.

Now before the court is defendant Leon's Motion for Summary
Judgment in which he asserts that the Plaintiff has failed to
establish that excessive force was used or that Travillion
suffered more than a *de minimis* injury.

## A. The Basis of Travillion's Action

In this case Travillion seeks to assert liability against
the remaining Defendant pursuant to the provisions of 42 U.S.C. §
1983. To state his claim the Plaintiff must meet two threshold
requirements. He must allege: 1) that the alleged misconduct was
committed by a person acting under color of state law; and 2)
that as a result, he was deprived of rights, privileges, or
immunities secured by the Constitution or laws of the United
States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor,
451 U.S. 527, 535 (1981), overruled in part on other grounds,
Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

## B. The Factual Record

Travillion's sole remaining claim is that he was subjected
to excessive force because Defendant Leon allegedly used mace and
"physically abused" him after he complained about the meal he was
served. The factual record developed by the parties includes a
misconduct report signed by Defendant Leon which sets out his
version of events:

> On the date and approximate time above
> Officer Parkinson informed me that three

- 2 -

> inmates refused to lock-in following the Ash
> Wednesday lunch tray. Upon my arrival I
> observed inmate Travillion sitting at a
> table. I called escort support listed above
> and gave inmate Travillion another direct
> order to take it to his cell which he refused
> and continued to argue about the tray, I then
> pulled my [mace] out and gave another direct
> order which he refused. At that time I
> dispensed one three second burst into the
> face area and then used necessary amount of
> force to cuff inmate. Inmate's demeanor was
> passive and did not resist in cuffing.
> Inmate was then escorted to 8-E where he was
> decontaminated.

(Doc. 43, Ex. B). Thus, there is evidence in this record which

shows that chemical spray was used as a means to maintain order

within the jail and to enforce two direct orders which Travillion

disobeyed.

The Plaintiff, on the other hand, has provided several

descriptions of the events which support his action. In his

Complaint, he alleged that he "wished to file a complaint" about

the food he was served, but that Officer Parkinson refused to

provide him with a complaint form. (Doc. 6, ¶ IV). Travillion

then asked to speak to a superior officer. Defendant Leon, along

with Sgt. Smarra, arrived about ten minutes later. At that time,

Travillion "tried to explain" his objection to the meatless meal,

but Leon told him if he "didn't like lunch, he didn't have to

eat." (Id.). Travillion made additional "requests" to obtain a

complaint form and to speak to the Deputy Warden. It was at this

juncture that Leon allegedly used chemical spray, pulled

Travillion out of his seat by his arms, and handcuffed him.
(<u>Id</u>.).

In his initial response to the Motion to Dismiss Travillion
asserted that Leon refused his request for a complaint form. He
then sprayed mace "without warning after Plaintiff requested the
assistance of the Major in regards to" the complaint he made with
respect to the lunch menu. (Doc. 15, at 1). Now, in response to
the Motion for Summary Judgment, the Plaintiff again states that
he objected to the meatless lunch and requested a complaint form.
He claims that Leon failed to comply with his request and instead
showered him with chemical spray "without warning". He also
claims that Leon used a "painful martial arts maneuver" to
transfer Travillion "to the D.H.U.". (Doc. 43, ¶¶ 8-9). In
addition, Travillion asserts that he was not argumentative, nor
did he pose any threat to Leon or any other guard. (<u>Id</u>., ¶ 10).
Finally, the Plaintiff asserts that Leon used chemical agents and
excessive force, even though he maintained a "passive demeanor"
and that he was "non-resistant". (<u>Id</u>., ¶ 13).

In support of his response, Travillion also submits the
affidavit of fellow inmate, Deering Carter, who witnessed the
event. Carter asserts that it was Travillion's request to speak
to Major Dennis which prompted the use of chemical spray -even
though, in Carter's view, Travillion posed "no threat
whatsoever". (Doc. 43, Ex. A at ¶ 3).

## C. **The Analysis**

Leon argues that he is entitled to summary judgment because the actions taken against Travillion do not constitute excessive force. While the Eighth Amendment protects inmates against cruel and unusual punishment, it does not protect an inmate against every minimal use of force. Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir.2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson v. McMillian, 503 U.S. 1, 9,(1992) (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

In an excessive force claim under the Eighth Amendment, summary judgment in favor of a defendant is appropriate where the evidence, viewed in the light most favorable to the plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." Thomas v. Ferguson, 361 F.Supp.2d 43, 438 (N.J.2004) (citing Whitley v. Albers, 475 U.S. 312, 322 (1986)). The central inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Mensinger, 293 F.3d at 649 (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir.2000)). "When prison officials maliciously and sadistically use force to cause harm,

- 5 -

contemporary standards of decency always are violated . . .
whether or not significant injury is evident." Brooks v. Kyler,
204 F.3d 102, 108-109 (3d Cir.2000)(de minimus injuries alone are
not a sufficient basis upon which to grant summary judgment in
favor of defendants).

The Court's task, then, is to determine if, when viewing the
facts in the light most favorable to the Plaintiff, a reasonable
jury could conclude by a preponderance of the evidence that
Defendant Leon had a malicious and sadistic intent to cause harm
to the Plaintiff. That said, the district court must consider
several factors in determining whether excessive force has been
used against an inmate:

> (1) the need for the application of force;
>
> (2) the relationship between the need and the
> amount of force that was used;
>
> (3) the extent of the injury inflicted;
>
> (4) the extent of the threat to the safety of
> staff and inmates, as reasonably perceived by
> responsible officials on the basis of facts known
> to them; and
>
> (5) any efforts made to temper the severity of the
> forceful response.

Mensinger, 293 F.3d at 649 (quoting Hudson, 503 U.S. at 7).
These factors will be addressed seriatim.

- 6 -

## 1. The Need for the Application of Force

There is no dispute that Defendant Leon had the authority to order Travillion to leave the lunch room and to return to his cell. Here, Leon ordered Travillion to vacate the lunch room twice before he employed force. Significantly, neither Travillion nor inmate Carter expressly deny that Leon ordered Travillion to vacate the lunch room. Additionally, the pleadings in this case as well as Carter's affidavit offer no denial of Travillion's refusal to comply with an order made by a corrections officer. Even if, as Travillion claims, he was complaining about the meatless meals, he did not have the right to ignore Leon's order. While Travillion claims that his comments were not threatening, he nevertheless continued to insist that he speak to Leon's superior officer. Again, even assuming that Travillion was not confrontational, it remains clear that he was not compliment with Leon's directions. Consequently, there was a justifiable need for Leon to use force.

## 2. The Relationship Between the Need and Amount of Force

Leon may be liable to Travillion if he acted with sadistic and malicious intent to cause pain. Brooks, 204 F.3d at 109 ("[D]efendants' acts are not shielded from constitutional scrutiny simply because a plaintiff did not proffer objective evidence of more than de minimus injury"). The crucial inquiry is the manner in which the injury was inflicted  -not the injury

itself. <u>Rhodes v. Robinson</u>, 612 F.2d 766, 771 (3d Cir.1979).
Here, Travillion argues that he did not threaten Leon but rather
only asked to speak to Leon's supervisor before he vacated the
lunch room. The Plaintiff's argument as it relates to his
demeanor is inapposite. The fact that Travillion remained
"passive" when he resisted Leon's direct orders does not show
that there existed no need for the use of force. It appears,
therefore, that Leon used force in a fashion that was only
designed to obtain Leon's compliance with his direct orders.
Consequently, Leon's actions did not become sadistic because
Travillion chose to be passively disobedient to an order.

### 3. The Extent of the Plaintiff's Injuries

"Although not dispositive, [the] Plaintiff's injuries are
relevant to determining if excessive force was used against
Plaintiff." <u>Thomas v. Ferguson</u>, 361 F.Supp.2d 435, 438
(D.N.J.2004) (<u>quoting</u> <u>Brooks</u>, 204 F.3d at 108). "The degree of
the resulting injury can be highly relevant to the determination
of the unreasonableness of the force used." <u>Id</u>. However, *de
minimus* injuries "do not necessarily establish *de minimus* force".
<u>Mensinger</u>, 293 F.3d at 649.

Travillion suffered temporary pain from both the use of
chemical spray and from the hold on his arm while being
handcuffed. Neither of these physical effects rise above the

- 8 -

level of a *de minimis* injury. Furthermore, no treatment was
required and no permanent injury is alleged. Although not
dispositive, it is marginally relevant to recognize that
Travillion's injuries were minor.

4. Staff and Inmate Safety and the Tempered Use of Force

Leon's report, as well as Travillion's own allegations, show
that the Defendant ceased using force after he succeeded in
removing the Plaintiff from the lunch area. Again, both
Travillion's and Carter's statements in which they say that the
Plaintiff "posed no threat" at any time during the incident is
irrelevant since the force was applied to obtain compliance with
two direct orders.

5. Weighing the Factors

All of the factors, even viewed in the light most favorable
to the Plaintiff at the summary judgment stage of the
proceedings, weigh in Leon's favor. The evidence demonstrates
that there was a need for the application of force because
Travillion refused to obey Leon's direct order to vacate the
lunch room and to return to his cell. Also, the relationship
which existed between the need for force and the amount of force
used by Leon were appropriate and commensurate to the
circumstances faced by the Defendant. Finally, the injuries
Travillion sustained were relatively minor and the degree of
force used by Leon was appropriately tempered to confront

- 9 -

Travillion's refusal to obey his direct orders.

**D. Qualified Immunity**

Leon raises the defense of qualified immunity. The Court
need not analyze this issue because it has already resolved the
substantive constitutional issue and recommended a finding
favoring the Defendant on the merits. See Saucier v. Katz, 533
U.S. 194, 199-201 (2001).

### III   CONCLUSION

It is respectfully recommended that Defendant Leon's Motion
for Summary Judgment be granted.


In accordance with the Magistrates Act, 28 U.S.C.
§ 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for
Magistrates, the parties are allowed ten (10) days from the date
of service to file objections to this report and recommendation.
Any party opposing the objections shall have seven (7) days from
the date of service of objections to respond thereto.   Failure to
file timely objections may constitute a waiver of any appellate
rights.

Franci X. Caiazza.

FRANCIS X. CAIAZZA
United States Magistrate Judge

- 10 -

Dated:   January 31, 2006


cc:   Jamar L. Travillion, 78951
      Allegheny County Jail
      950 Second Avenue
      Pittsburgh, PA 15219

      Michael H, Wojcik, Esquire
      Mike Adams, Esquire
      Allegheny County Law Department
      300 Fort Pitt Commons
      445 Fort Pitt Boulevard
      Pittsburgh, PA 15219